IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CARMIE L. ELMORE III<br>923 6th Street, NE<br>Washington, DC 20002 | *<br><br>* | |
| Plaintiff, | * | Civil Action No. _____ |
| v. | * | |
| STRYKER EMS, a division of STRYKER CORPORATION<br>3800 East Centre Avenue<br>Portage, Michigan 49002 | *<br><br>*<br><br>* | |
| Defendant. | *<br>* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CIVIL COMPLAINT AND JURY DEMAND**

Plaintiff Carmie L. Elmore III ("Plaintiff" or "Mr. Elmore"), by and through undersigned counsel, hereby alleges for his Complaint in this federal civil action as states:

**The Nature of the Action**

1. This is Plaintiff's civil action against Defendant Stryker EMS, a division of Stryker Corporation ("Defendant" or "Employer"), seeking damages and/or other legal relief, including for Defendant's violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*, for the Defendant's violation of the Civil Rights Act of 1866, as amended and codified at 42 U.S.C. § 1981 and for the Defendant's violation of the District of Columbia Human Rights Act ("DCHRA"), codified at DC ST § 2-1401.01 *et seq*.#

**The Parties**

2. Plaintiff Carmie L. Elmore III is a citizen of Washington, D.C. Mr. Elmore is an African-American male.

3. Stryker EMS is a division of Stryker Corporation, a Michigan corporation. The principal offices of Stryker EMS are listed as 3800 East Centre Avenue, Portage, Michigan 49002. Stryker EMS conducts regular, substantial business in Washington D.C. Stryker EMS was acting through its employees, servants, agents, or other affiliates as to the matters alleged herein.

### Jurisdiction, Jury Trial, and Venue

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331, § 1332, § 1343(a)(4), and/or § 1367.

5. The Title VII cause of action stated herein is authorized by 42 U.S.C. §§ 2000e. Section 1981a(c) authorizes a jury trial for Mr. Elmore's Title VII claim.

6. The 42 U.S.C. § 1981 cause of action stated herein is authorized by 42 U.S.C. § 1981a. Section 1981a(c) authorizes a jury trial for Mr. Elmore's Section 1981 claim.

7. The cause of action under the District of Columbia Human Rights Act ("DCHRA"), codified at DC ST § 2-1401.01 *et seq.*, is authorized by DC ST § 2-1403.16. The Plaintiff is entitled to a jury trial for claims under the DCHRA.

8. Venue is proper in this District under 28 U.S.C. § 1391, where a substantial part of the events giving rise to Plaintiff's alleged claims occurred.

9. Plaintiff Elmore filed a Charge of Discrimination with the U.S. EEOC on or about August 26, 2015. The Charge was also within the jurisdiction of the D.C. Office of Human Rights. On October 18, 2016, the U.S. EEOC issued a "right-to-sue letter" in the matter, a copy of which is attached hereto as Exhibit 1.

10.     Plaintiff has complied with all conditions precedent, administrative requirements, and/or legal preconditions otherwise to properly file and pursue this civil action.  This civil action is lawfully filed in this Court.  All conditions precedent have occurred or been performed.

### Background Facts

11.     In or around February 2008, Mr. Elmore was hired as an Area Sales Manager for Stryker. As an Area Sales Manager, Mr. Elmore was responsible for Stryker's sales in West Virginia and Virginia, and subsequently transitioned to cover Stryker's sales in the District of Columbia. When he was not on the road handling sales calls or at corporate meetings, Mr. Elmore performed his job duties for Stryker from his home in Washington, DC.

12.     During his tenure at Stryker, Mr. Elmore performed his job duties in an extremely competent manner and, in fact, received numerous awards for his excellent work. Examples of these awards and recognitions include, but are not limited to: 2011 Territory Manager of the Year Si Johnson Award; 2011 PTQ Homer Stryker Award; 2011 Market Segment Award - Stair Pros; 2011 Rolex Winner; 2012 Market Segment Award - Stair Pros; 2013 Territory Manager of the Year Si Johnson Award; 2013 Lee Stryker Award for Highest Annual Total Sales; 2013 Market Segment Excellence Award – Cots; and 2013 143.2% PTQ and 25.5% Growth. Upon information and belief, no other Stryker employee has earned the title of representative of the year two out of three years, aside from Mr. Elmore. Mr. Elmore also regularly obtained several millions of dollars in annual sales orders for Stryker, ranging from $3,383,679 to $4,154,843 during the course of his employment. He also mentored new sales representatives.#

13.     As a result of his successful sales skills, Mr. Elmore would receive in excess of fifty (50) customer calls per day. Due to the unreliable telephone transmission in Mr. Elmore's sales territory when he was on the road, he informed his customers that calls to his cell phone

would often go straight to his voicemail. Mr. Elmore also instructed his customers to send him an e-mail or contact the home office if they had an emergency and could not reach him on his cell phone. Mr. Elmore regularly checked his voicemail and deleted old voicemails as soon as possible.

14. For the first three years of his employment at Stryker, Mr. Elmore was the only African American in the company, aside from one Information Technology employee. By the end of his seven-year employment, Mr. Elmore was only one of three African Americans within the company. During his employment at Stryker, Mr. Elmore worked under a few different supervisors. Mr. Elmore did not encounter problems with any of his prior supervisors. Indeed, he did not encounter any issues within the company until James Witham became his supervisor in late 2011. During his time as Mr. Elmore's supervisor, Mr. Witham engaged in racially discriminatory behavior and made several racially discriminatory remarks to Mr. Elmore.

15. In 2012, Mr. Elmore attended Stryker's National Meeting, during which he won multiple awards and was honored by many of Stryker's top executives. Instead of being able to enjoy this experience, however, Mr. Elmore was subject to Mr. Witham's racist remarks. During this National Meeting, Mr. Witham approached Mr. Elmore and stated, "I thought your suit would have a lot more buttons and be brighter," in reference to a stereotype of African American males wearing colorful, baggy suits.

16. Mr. Witham also made several comments to Mr. Elmore using the word "ghetto" during the course of his employment, commonly referring to "ghetto areas" and "ghetto accounts." In addition, Mr. Witham told Mr. Elmore that a certain account should be his "bread and butter" because "all [Mr. Elmore's] people work [there] and are all in charge," an obvious

reference to black customers.  At one point, Mr. Witham went so far as to say that he "[couldn't] believe there are so many blacks in [Washington, DC]."

17.     On one occasion, Mr. Elmore asked Mr. Witham why he had never recommended Mr. Elmore for appointment to Stryker's Executive Council or never provided him with the opportunity for the Director of Sales or other high-ranking executives to join him on sales calls—both of which are privileges bestowed upon Stryker sales representatives who earn the top sales in the company, which Mr. Elmore had indeed earned. In response, Mr. Witham became visibly disturbed, shook his head at Mr. Elmore and stated he would not be a good fit for those privileges. When Mr. Elmore asked him to explain his statement, Mr. Witham referred to Mr. Elmore's "kind," and then changed the subject.

18.     Not only did Mr. Witham continually make racist remarks toward Mr. Elmore, he also regularly lashed out and yelled at Mr. Elmore during his employment with Stryker. On one occasion, Mr. Elmore sought Mr. Witham's assistance on a large customer account. Mr. Witham joined Mr. Elmore on a visit to a customer and, unfortunately, the customer ultimately chose the services of one of Stryker's competitors, as the competitor could offer the customer a price that Stryker could not meet. When Mr. Elmore informed Mr. Witham that the customer had chosen one of Stryker's competitors, and even though Mr. Witham had been present at the client meeting, Mr. Witham proceeded to verbally berate and curse at Mr. Elmore.  On several other occasions during which Mr. Elmore requested Mr. Witham's assistance, Mr. Witham flatly refused. Mr. Witham regularly made excuses as to why he could not assist Mr. Elmore, even though other sales representatives in Mr. Elmore's region received regular assistance from Mr. Witham.

19. In 2013, Mr. Elmore sold products containing brand new technology to a customer. Since the technology was so new, there were many technical issues with the product, which necessitated several trips to the client from one of Stryker's technicians to repair broken parts. Mr. Elmore informed Mr. Witham of his concerns regarding the new technology continually breaking down, and also informed him that the customer was upset at the product's repeated technical issues. In response, Mr. Witham stated, "Carmie, I am the f***ing boss. I tell you, you don't tell me."

20. Mr. Witham also treated Mr. Elmore more harshly and with less care than other Stryker employees, who, unlike Mr. Elmore, were not African American. For instance, on one occasion, Mr. Elmore entered a trade show less than one minute late. Mr. Witham pulled Mr. Elmore outside of the trade show booth and reprimanded Mr. Elmore for his tardiness. Several other Stryker employees entered the trade show after Mr. Elmore; however, those Stryker employees were not reprimanded by Mr. Witham for their tardiness. On another occasion, Mr. Elmore complained to Mr. Witham about an inappropriate gesture made to him by another Stryker employee (during a meeting, this employee walked up behind Mr. Elmore and thrust his hips towards Mr. Elmore's head). When Mr. Elmore informed Mr. Witham of this inappropriate behavior, Mr. Witham dismissed the incident and stated it was "no big deal."

21. On or about March 4, 2015, after enduring Mr. Witham's racist conduct and remarks and hostile work environment for several years, Mr. Elmore was terminated by Mr. Witham for "customer service" issues, despite the regular accolades Mr. Elmore received from Stryker for his excellent work. On the day he was terminated, Mr. Elmore met with Mr. Witham and Mariel Kelly from Stryker's Human Resources department. Although Ms. Kelly asked Mr. Elmore if he had anything he would like to say, Mr. Witham started laughing at Mr. Elmore

when Mr. Elmore began to voice his numerous concerns. Following his termination, Mr. Elmore was replaced by a Caucasian individual.#

## Count One
**(Plaintiff vs. Defendant)**

### Violation of Title VII

22. All prior allegations are adopted by reference in this Count as if set forth fully herein.

23. Plaintiff suffered intentional discrimination because of his race and national origin in violation of 42 U.S.C. § 2000e-2(a)(1).

24. Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race and national origin.

25. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

WHEREFORE, Plaintiff Elmore hereby demands judgment against the Defendant for compensatory (or actual) damages, including lost wages, salary, employment benefits, or other compensation denied or lost (or any actual monetary losses sustained by the employee as a direct result of the violation(s) complained of herein), as well as non-economic damages, in an amount to be proven and determined at trial; punitive (or exemplary) damages as allowed by law; reinstatement (and/or front pay in lieu of reinstatement in an amount to be proven and determined at trial); interest as allowed by law; for such legal and/or equitable relief as may be appropriate, including back pay, full restoration of benefits, and/or promotion; an award of attorneys' fees, expert witness fees, other litigation expenses, and costs of the action; and such other and further relief as the nature of Plaintiff's cause requires.

### Count Two
**(Plaintiff vs. Defendant)**

**Violation of 42 U.S.C. § 1981**

26. All prior allegations are adopted by reference in this Count as if set forth fully herein.

27. Plaintiff suffered intentional discrimination because of his race.

28. Plaintiff was discriminated against with respect to the terms and conditions of his employment with the Defendant as a direct result of his race.

29. The above discriminatory acts by the Defendant, its agents, and employees violate Section 1981.

30. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered substantial pecuniary losses, severe humiliation, mental anguish, and pain and suffering.

WHEREFORE, Plaintiff Elmore hereby demands judgment against the Defendant for compensatory (or actual) damages, including lost wages, salary, employment benefits, or other compensation denied or lost (or any actual monetary losses sustained by the employee as a direct result of the violation(s) complained of herein), as well as non-economic damages, in an amount to be proven and determined at trial; punitive (or exemplary) damages as allowed by law; reinstatement (and/or front pay in lieu of reinstatement in an amount to be proven and determined at trial); interest as allowed by law; for such legal and/or equitable relief as may be appropriate, including back pay, full restoration of benefits, and/or promotion; an award of attorneys' fees, expert witness fees, other litigation expenses, and costs of the action; and such other and further relief as the nature of Plaintiff's cause requires.

### Count Three
### (Plaintiff vs. Defendant)

### D.C. Human Rights Act Claim

31. All prior allegations are adopted by reference in this Count as if set forth fully herein.

32. Anti-race and anti-color discrimination provisions of the District of Columbia Human Rights Act ("DCHRA") are stated at DC ST § 2-1402.11. The DCHRA allows the recovery of compensatory damages.

33. The Defendant has unlawfully discharged or otherwise discriminated against Mr. Elmore with respect to his compensation, terms, conditions, or privileges of employment, including promotion, because of his race and color. See DC ST § 2-1402.11(a)(1).

34. Mr. Elmore has filed this civil action in compliance with all requirements of the DCHRA, including all requirements of DC ST § 2-1403.16.

35. DC ST § 2-1402.11(a)(1) imposes liability against an employer for discharge because of the individual's race or color, and Mr. Elmore is properly entitled to requested legal relief based upon the Defendant's wrongdoing alleged herein. Remedy provisions of the DCHRA are stated in DC ST § 2-1403 of the statute. Remedies for unlawful race and color discrimination under the DCHRA include injunctive relief; reinstatement; back pay; and compensatory damages. DC ST § 2-1403. The DCHRA also authorizes the award of attorneys' fees, litigation costs, and expenses. See DC ST § 2-1403.

36. By its actions herein, the Defendant has engaged in intentional wrongdoing and "evil motive or actual malice." as would sustain an award of punitive damages under the DCHRA. *See Parker-Williams v. Charles Tini & Associates, Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014).

WHEREFORE, Plaintiff Elmore hereby demands judgment against the Defendant for compensatory (or actual) damages, including lost wages, salary, employment benefits, or other compensation denied or lost (or any actual monetary losses sustained by the employee as a direct result of the violation(s) complained of herein), as well as non-economic damages, in an amount to be proven and determined at trial; punitive (or exemplary) damages as allowed by law; reinstatement (and/or front pay in lieu of reinstatement in an amount to be proven and determined at trial); interest as allowed by law; for such legal and/or equitable relief as may be appropriate, including back pay, full restoration of benefits, and/or promotion; an award of attorneys' fees, expert witness fees, other litigation expenses, and costs of the action; and such other and further relief as the nature of Plaintiff's cause requires.

Respectfully submitted,

**MALLON & McCooL, LLC,**

/s/
Joseph T. Mallon, Jr.
D.C. Fed. Bar No.: 441376
Suite 815
300 East Lombard Street
Baltimore, Maryland  21202
(410) 727-7887
Fax:  (410) 727-4770
JMallon@mallonandmccool.com

*Attorney for Plaintiff Carmie L. Elmore III*

## **PRAYER FOR JURY TRIAL**

Plaintiff Elmore demands a trial by jury as to all issues so triable.

                                                              /s/
                                    Joseph T. Mallon, Jr